# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AZIZ ERRAHMOUNI, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-12-1380-HE |
| | ) |
| PROGRESSIVE NORTHERN | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Aziz Errahmouni filed this action against defendant Progressive Northern Insurance Company asserting claims for breach of contract, bad faith, and negligent misrepresentation. The claims arise out of communications between the parties in October and November 2011 pertaining to the renewal of plaintiff's insurance policy and of a traffic accident which occurred the following spring. Defendant has moved for summary judgment and plaintiff has moved for partial summary judgment on the breach of contract claim. Both motions are at issue.

### Background

The background facts are substantially undisputed. Plaintiff was the holder of an automobile insurance policy issued by defendant. The policy was set to expire at 12:01 a.m. on November 3, 2011, unless a renewal payment was received prior to that time. On October 31, 2011, plaintiff contacted defendant to get an estimate on the cost of adding two additional vehicles to his policy. Plaintiff agreed to a renewal payment covering the additional vehicles

1

of $1,523, and, aware that his credit card was at its limit, requested that defendant wait to charge his card until November 3, 2011. Defendant agreed to charge the card on November 3.

On November 1, 2011, defendant emailed plaintiff a Renewal Declarations Page indicating the addition of the two new vehicles and other specifics about the renewed insurance policy, including new insurance verification cards. The Declarations Page stated that the policy would only be renewed upon receipt of payment.

On November 2, plaintiff scheduled a $2,000 online payment to his credit card. That night, his credit card company informed him that the payment would not post until the next day. On November 3, at 1:20 a.m. EST, defendant attempted to charge plaintiff's credit card for the renewal payment, but the card was declined for insufficient funds. At 7:48 p.m. EST, the credit card company processed the $2,000 credit card payment.

On November 4, plaintiff called defendant to provide VIN numbers for the two new vehicles. In the conversation with defendant's customer service representative, plaintiff was initially informed that his coverage had lapsed due to nonpayment. He told the representative that a payment was supposed to have been scheduled for the previous day. Upon further inquiry, the representative stated that she was mistaken, that the payment was still processing, and that the vehicles were covered.[1]

---

[1]The exact statement by the representative is as follows: "I do show the scheduled payment for [November 3] . . . We have it – you know what, I do apologize, it's documented on here, we just haven't fully processed it as of yet, but you – you are covered with all four vehicles . . . And whenever your policy renews with that payment, which we're still in the process, the VIN will be updated and we'll send your new information." Recorded Conversation of Aziz Errahmouni [Doc.

Over the next week, plaintiff received a series of emails from defendant regarding his insurance policy: a November 4 email entitled "You have new Progressive policy documents"; a November 5 email entitled "Your Progressive policy was not renewed"; a November 6 email entitled "Regarding your recent phone call"; and a November 9 email entitled "We're sorry you left us." *See* [Doc. Nos. 29-20, 29-21, 29-22, & 29-23, respectively]. The November 4 email contained a link to a letter documenting the decline of plaintiff's credit card the previous day. [Doc. #29-20, pg. 3]. Plaintiff testified that he read the subject lines but never read the bodies or opened any of the emails. [Doc. #29-5, pg. 12]. He also testified that he had not reviewed his credit card statement and therefore never noticed that his credit card was not charged the $1,523 renewal cost. *Id.* at 15.[2]

On March 19, 2012, plaintiff was involved in an automobile accident. He contacted defendant, who informed him that his policy had lapsed on November 3, 2011, due to nonpayment. Defendant conducted an investigation into the policy, including reviewing recorded phone calls and other aforementioned correspondence, and again concluded that plaintiff's insurance had lapsed. Plaintiff then filed this lawsuit.

## Discussion

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not "genuine" if the non-movant can do no more than

---

*#29-18, pg. 8].*

[2]*Apparently, plaintiff has still not paid the premium for the disputed period.*

"simply show that there is some metaphysical doubt as to the material facts." Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1084 (10th Cir. 2006). Summary judgment is appropriate if the evidence is so one-sided that one party must prevail as a matter of law. Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1179 (10th Cir. 2007). Applying these standards, and looking at the evidence most favorably to the plaintiff,[3] the court concludes defendant's motion should be granted and plaintiff's motion should be denied.

*Breach of contract*

It is undisputed that plaintiff has not paid the premium applicable to the renewal period and that defendant's various references to the renewal were contingent on payment being made. Rather than relying on payment and a resulting contract, plaintiff's breach of contract claim is based on a theory of promissory estoppel. He argues that defendant should be estopped to deny the existence of coverage based on statements made by Progressive personnel to him. The essential elements of promissory estoppel are: "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." Eureka Water Co. v. Nestle Waters N. Am., Inc., 690 F.3d 1139, 1156 (10th Cir. 2012) (quoting Garst v. Univ. of Okla., 38 P.3d 927, 931 (Okla. Civ. App. 2001)). Plaintiff's claim fails because the undisputed facts make it clear he cannot establish the third element.

---

[3]*A court views the evidence and the reasonable inferences therefrom in the light most favorable to the non-moving party.* Garrison v. Gambro Inc., *428 F.3d 933, 935 (10th Cir. 2005).*

4

Viewing the evidence in the light most favorable to plaintiff, there is evidence from which a fact finder might conclude that a clear and unambiguous promise as to the existence of coverage had been made to him. In particular, the portion of the November 4 telephone call in which the customer service agent refers to the "scheduled payment for yesterday," then later says "we have it" and that "we haven't fully processed it as of yet," concluding with "you are covered with all four vehicles," is arguably such a promise. While there are other possible inferences that could be drawn from the conversation considered as a whole, this evidence supports a permissible inference that the payment had been received, though not yet formally booked, and that coverage was in place. There is also evidence sufficient to create a justiciable question as to the second and fourth elements of the promissory estoppel requirements.

The problem is with element three—is there evidence from which a jury might conclude that plaintiff <u>reasonably relied</u> on the purported promise of coverage? There is, of course, evidence of reliance. The question is whether plaintiff's reliance was reasonable.

It is undisputed that plaintiff had elected to communicate with his insurer via email and that he received a number of emails from Progressive in the days following the November 4 conversation. Specifically, later on November 4, 2011, Progressive sent plaintiff an email with the subject line "You have new Progressive policy documents." The body of the email contained the statement "We could not accept the credit or debit payment you scheduled in advance." Had that been the only notice plaintiff received of the payment problem, and with plaintiff not reading the contents of the emails, he might have plausibly

assumed that the policy was still in force. But that was not the only notice. On November 5, 2011, Progressive sent an email to plaintiff with the subject line "Your Progressive policy was not renewed," with the body of it further stating "We're sorry that you didn't renew your policy with us." On November 6, he got an additional email "Regarding your recent phone call."[4] Then, on November 9, Progressive sent plaintiff a further email with the subject line "We're sorry you left us." By the time of receipt of the final email, even if reading only the subject lines of them,[5] plaintiff could not have reasonably assumed that his policy had been renewed.[6]

This conclusion is buttressed by the undisputed evidence that a charge for payment of the insurance premium never showed up on plaintiff's credit card statements for any of the four months between the renewal deadline and the date of the accident. It is also undisputed that plaintiff never looked at the statements to determine whether defendant had been paid.

The evidence that defendant sent insurance verification cards to plaintiff does not support a contrary inference. It is undisputed that the verification cards were sent to plaintiff prior to the date when, under the agreed payment arrangement, payment was to be made and

---

[4]*The body of the email does not refer to any policy non-renewal. However, it is undisputed that plaintiff did not read the body of the email, but limited any review of it to the subject line.*

[5]*Plaintiff alludes to statements in the body of the emails indicating he could ignore them if payment had been made in the meantime, but he acknowledges he did not read the contents.*

[6]*Plaintiff's argument that his policy could not have lapsed because defendant did not send a cancellation notice, as required by the insurance contract, is unpersuasive. Oklahoma courts have held that cancellation notice provisions are inapplicable when the policy expires due to non-renewal. See* Kirkpatrick v. Allstate Ins. Co., *859 P.2d 532, 535 (Okla. Civ. App. 1993).*

6

that their effectiveness was explicitly contingent on payment for the policy. It is also undisputed that this sequence—sending the cards with the expectation of renewal, but subject to payment being made—had been the practice between Progressive and plaintiff in the past.

In short, the undisputed facts made it clear that plaintiff could not have reasonably relied on statements made to him on November 4 in light of the multiple emails he received thereafter and the absence of any indication of payment on his credit card statements. A party cannot willfully blind himself to the facts and circumstances reasonably available to him and then later claim reliance on selective statements of the other party. *See* Hillers v. Local Fed. Sav. & Loan Ass'n, 232 P.2d 626, 630 (Okla. 1951) ("[E]stoppel is denied where the party claiming it was put on inquiry and had available means of ascertaining the true state of facts."); *see also* Jenkins v. Evergreen Nat'l Indem. Co., 30 F. App'x 879, 881-82 (10th. Cir. 2002) ("Thus, a party who claims the benefits of an equitable estoppel on the ground that he has been misled through the conduct of another must not have been misled through his own want of reasonable care.") (quoting Hillers at 630) ( internal quotation marks omitted).

As a result, plaintiff's effort to rely on the doctrine of promissory estoppel fails. As the doctrine does not apply, and it is undisputed that plaintiff did not in fact pay the premium necessary to renew his policy, defendant is entitled to summary judgment as to the contract claim.

*Bad faith*

Under Oklahoma law, an insurer has an "implied in law" duty to act in good faith and deal fairly with its insured. Christian v. Amer. Home Assurance Co., 577 P.2d 899, 901

(Okla. 1977). This includes a duty, when presented with a claim, to conduct an investigation that is reasonable under the circumstances. Newport v. USAA, 11 P.3d 190, 195 (Okla. 2000). The essence of a bad faith claim is the insurer's "unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981). That standard does not foreclose an insurer's right to resist a claim where the insurer has a legitimate defense. Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991). Similarly, a bad faith claim "will not lie where there is a legitimate dispute." Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984). As stated in Ball v. Wilshire Ins. Co., 221 P.3d 717, 725 (Okla. 2009):

> If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith. The tort of bad faith hence does not prevent an insurer from denying, resisting or litigating any claim as to which the insurer has a reasonable defense.

Plaintiff's bad faith claim is based largely on a conversation he had with one of defendant's customer service representatives on March 20, 2012, after his traffic accident. In that conversation, the representative indicated to plaintiff that mistakes or errors were made in the processing of his payment. The representative informed him that either the payment should have gone through or that the representative he spoke with on the November 4, 2011, phone call should have informed him that the payment had been declined. *See* [Doc. #34-5, pg. 13-14]. Defendant makes two arguments in response. First, it argues that it owed no duty of good faith to plaintiff because his policy expired due to nonpayment. Second, it argues that it acted reasonably in denying plaintiff's claim.

8

The court concludes that no basis for a bad faith claim is present here. As previously noted, plaintiff's insurance policy did not renew through payment and he cannot establish the elements necessary for a claim of promissory estoppel. The result is that no contract existed out of which the duty of good faith would arise.

Even if a contract and duty of good faith were deemed to exist here, a concession such as that on March 20 that "mistakes were made," or words to that effect, does not, in and of itself, show bad faith. Bad faith requires more than simple negligence. *See* Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093-94 (Okla. 2005). There is nothing in the various conversations with defendant's personnel that suggests more than, at most, confusion or mistaken statements based on the state of plaintiff's attempted payment, its status in the bookkeeping system, or otherwise.

Further, the evidence is that, after the March 20 conversation, defendant conducted multiple investigations into plaintiff's claim and into why his policy had not been renewed. Defendant's later conclusion that it actually had not made mistakes in the handling of the particulars of the transaction is also not evidence of bad faith in the circumstances existing here. At most, it suggests a legitimate dispute as to coverage based the nature of the underlying contacts with plaintiff.

Defendant's motion will be granted as to the bad faith claim.[7]

---

[7]*Plaintiff's summary judgment response does not explicitly rely on the intended testimony of its bad faith expert, Harvey Lewis, which makes is unnecessary for the court to state in any detailed fashion its resolution of the issues raised by defendant's* Daubert *motion as to Mr. Lewis. However, Mr. Lewis' testimony would, in any event, be entirely excluded. His expert report wholly fails to identify the industry standards upon which he purports to rely and makes no effort to explain*

*Negligent misrepresentation*

In Oklahoma, negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Lopez v. Rollins, 303 P.3d 911, 916 (Okla. Civ. App. 2013) (quoting Restatement (Second) of Torts § 552). Defendant argues that summary judgment is proper because it did not provide plaintiff with false information, and because plaintiff's reliance on the provided information was not justifiable. Plaintiff counters that a number of statements made by defendant were false, and that justifiable reliance is an issue for the jury.

The above discussion of reasonable reliance in the context of plaintiff's contract claim is equally applicable to the claim for negligent misrepresentation. For the reasons stated, the evidence is insufficient to create a justiciable question as to whether plaintiff might have reasonably relied on any arguably false information given to him.

## Conclusion

For the reasons stated, defendant's motion for summary judgment [Doc. #29] is **GRANTED**. Plaintiff's motion for partial summary judgment [Doc. #31] is **DENIED.** Defendant's Daubert motion as to Mr. Lewis [Doc. #24] and plaintiff's motion to refer the

---

*his methodology, i.e. how he analyzed the facts of this case or how he reached his particular conclusions. A recitation of "50 years experience" plus conclusions is insufficient under the applicable standards.*

case to ADR [Doc. #40] are **STRICKEN AS MOOT**.

    **IT IS SO ORDERED**.

Dated this 9th day of December, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE